Good morning. Tim Shattuck on behalf of the City of Gettysburg. I'd first like to begin by defining the issues before the court. The government argues that none of the easements are relevant in this case other than the easement that was issued by the Corps of Engineers in March of 1978. In making that argument the government contends that all of the previous easements submitted by the government are not pertinent because they were only proposed easements. Significantly the trial court found, I'll call the March 1978 easement the 78 easement, the trial court found that the 1978 easement was never signed by the city, was never agreed to in writing by the city, and was never overtly assented to by the city. Having made that finding the trial court should have stopped and concluded that the government had therefore not shown that the city had agreed to the release in the 1978 easement and that the government had not been met its burden of showing that the takings claim filed by the city was barred by the release and should have denied the government's motion for summary judgment. Instead the court went on to make three errors. First the trial court sua sponte raised equitable estoppel as a defense on behalf of the government. Second the trial court inappropriately and improperly applied the estoppel elements to this case and third the trial court found that the easement in the release completely barred the city's takings claim. Before discussing the specific issues I'd like to draw to the court's attention the standard of review here and the court is on the government's evidentiary burden. As this court knows this case comes to this court on the grant of a motion for summary judgment. Obviously as the court well knows that the record must be viewed in the light most favorable to the city and the city must be given all reasonable inferences and presumptions from the facts in the record. Second this case comes to this court based on a grant of summary judgment determined on defenses asserted by or on behalf of the government. This case comes to this court on the defense of release of course equitable estoppel and release and obviously the government had the burden of proof on these affirmative defenses so this is not a case where on summary judgment the government can say the city failed to proffer evidence to support its claims. Instead the government had the higher burden of showing taking the record most favorable to the city the government has met its burden of proof by preponderance of the evidence of establishing estoppel release and waiver with undisputed facts. The trial court did not review the record in the light most favorable to the city and the trial court did not hold the government to its burden of proof on the defenses of equitable estoppel release and waiver. Likewise in this government's briefs and make several factual assertions that are based on inferences from the record ignoring the fact that the city is entitled to the inferences not the government. If the court examines the record with the looking at it from the perspective that the facts are taken in the light most favorable to the city and holds the government to its burden of proof on the defenses it will find that the trial court erred in granting summary judgment. As you know of course the Court of Federal Claims is a court in which a jury trial is not available and as a result there are sometimes not huge differences between a summary judgment proceeding on an elaborate record and a trial. I mean frequently in fact trials in the Court of Federal Claims are mainly documentary and frequently on the record. What is it, in thinking about the problem that you've pointed out of the summary judgment, what specifically is it that you think you were not able to present to the court or to obtain an appropriate finding from the court that you would have been entitled to had you had a full trial? Well on the issue of Estoppel for instance, there was no evidence in the record as to what the parties, what the government believed in 1978 when the city failed to respond when the government sent the 1978 easement to the city. Unsurprisingly because it was so long ago but there was nothing in the record one way or another that the government was misled by the city's silence or that the government relied on the city's silence in not responding to the 1978 easement or not accepting it. Is there any evidence with respect to that question that you would put on at a trial or what happened here that wouldn't have happened at a trial, put it that way? Because the judge raised the defense of Estoppel sua sponte two years after discovery had closed, it had never been litigated by the parties. And if it had been raised earlier, I would have conducted discovery with respect to who were the people in charge at the Corps of Engineers back in 1978 when this release was sent to the city. And try to, if they were still around, track those people down and depose them to see what, if they really believed it may have been, yeah we never thought about that issue one way or another or we sent it to the city and we knew they never responded and we just decided not to pursue it any further, we didn't think anything of it. We also, that's the primary point, just that because it was never raised until discovery was closed and it was so late in the litigation, neither party had the chance to investigate or present evidence as to what the Corps really believed. It may have been that the Corps didn't even realize that the city didn't respond to the 1978 easement and therefore could not have been misled. We just don't know because there was no discovery on that issue. Is your position that there is no effective disclaimer of liability at all, that is to say neither this easement nor any other easement in the record provides protection for the Corps against a claim by the government or is it limited to the license and the permit, is that your position or do you suggest that there is some protection given from some easement? First, if you take the government's position that the only easement that's applicable is the 1978 easement, that easement as I indicated was not agreed to by the city and the court made that finding. Even if we assume that the court was correct in saying, the trial court, that the city has stopped from asserting that it did not agree to the release in the 1978 easement, the release still doesn't bar the city's takings claims. And that gets to this court's case law in the DeRico, I hope I'm saying it right, decision cited in the briefs and in the trial court's opinion, where the court found that a release does not waive a takings claim unless it is clearly shown that the release or intended to release such a claim. And likewise we have the authority from the Henderson County Trilogy of Decisions, Henderson 2 and Henderson 3, where the Court of Federal Claims made it clear that a release is not effective to release a prospective takings claim unless the parties contemplated and bargained for the release of a takings claim. And unless it was specifically referenced in the release itself that takings claims are released. Is that the DeRico case that you cite for that proposition? I read the case differently. As I read it, so tell me why I'm wrong, as I read it, there was a waiver there and the whole issue and dispute was not whether takings argument was waived, but the scope of the waiver because it had a reference to a demolition and removal. And that was, as far as I read the case, that's what the case was about. The ambiguity there had to do with the scope of the waiver, but not in the context of whether or not it was a takings claim or whatever. I mean it happened to have been a takings claim, so takings is mentioned, but that wasn't really what the case looked at, analyzed or decided. Am I wrong about that? You're correct that there were inverse condemnation and takings claims at issue and that the court examined the specific language in the release of that case and found that it didn't apply to the claims being made in that case. How I'm summarizing it and using it as authority is exactly how the Henderson County Court did the Court of Federal Claims in the Henderson County case. It cited it for the same proposition and I've tried to state it as clearly and as closely as it was stated in the Henderson County decisions that unless there's intent by the releaser to release a takings claim, that the release is not effective against a takings claim. And that's exactly, if you look at the Henderson County citation back to DeRico, how it refers to that language. And that requires an express reference to taking? Either an express, I don't know if it's and or, but the court talks about there must be an express reference to the takings claim and that it had to be contemplated and bargained for. Well, let me give you an example and see whether you think this would be sufficient to come to it. Suppose there is an easement which is agreed to expressly by the parties which says, and to take off from the facts of this case, I recognize it's not the same text, but the easement says, the court hereby permits the city to put in whatever facilities are necessary to the drawing of water and conveyance of water both across the court's property and from the reservoir and anything else that's necessary. Subject, however, to the city's waiver of any right to sue the court for any damage that may result to any of the city's property as a result of the court's ordinary and customary activities governing the running of the reservoir. Would that waive a takings claim? I would say no because if the parties talked about it and it was discussed and negotiated at the time the release was signed, yes, but because if there's no evidence the parties never contemplated the release of a takings claim in the future and the release doesn't specifically reference a constitutional or takings claim, no, I don't believe it would. Plus, we have the additional... Do you think DRACO stands for that proposition? My guess is, and I'm guessing here, but I'm guessing there's not a lot of, there are probably a lot of easements out there and I bet very few of them have expressed waivers of takings claims. Underlying DRACO in the Henderson County case is the argument that, or the doctrine that the release of a constitutional right, which a takings claim is, can only be effective if it is voluntarily, knowingly, and intelligently made. And the Supreme Court has held that that same standard that's applied in the criminal context also applies in the civil context. And clearly on the facts here, it can't be shown that the release, that the government in this case, knowingly and intentionally relinquished its right to pursue a takings claim that was going to accrue 20 years later. And that's back to your question, Judge Bryson, is that, and you're hypothetical, I would say no, because there wasn't a knowing and intelligent waiver in that case. And how do we construe that? I mean, does that go to Judge Bryson's first point? So you would bring officials in from the state of South Dakota saying, when we wrote this broad waiver language, we didn't intend to cover our takings claims, and that's sufficient? No, I think that because it's a defense being raised by the government, and in this case the court, the government is the one that has to prove that there has been a valid release and waiver of the constitutional claim here. So the government is the one that has to come in and say, the city intended to release this claim, here's the evidence, X, Y, and Z. And that takes me back to my original point. This is a summary judgment case where the government had the burden of proof. It wasn't my burden to show that we didn't release the claims, it was the government's burden to show that the city had released the claims in 1978. Well, presumably the only way the government could show that is if the release itself specified, and that includes all takings claims. So is that what you're suggesting, in the absence of the release actually specifically referring to takings claims, takings claims aren't in? Yes, under the law of the Rico, Henderson County cases and the Supreme Court precedent requiring that a waiver of a constitutional right be knowing, voluntarily, and intelligent. There had to be evidence presented by the government that the city knew, understood, and realized at the time in 1978 that it was releasing those claims by the easement. And back to your question, also with respect to the only other applicable document here would be the Section 10 permit, and the same argument flows there, is that there's no evidence that the city understood when it applied for a Section 10 permit that it was waiving its constitutional right to, in the future, assert a takings claim. And therefore, there is no document in the record which would completely prohibit the city from pursuing its takings claim. So to be sure I understand the premise. The premise of the takings claim is that there was no wrongdoing by the Corps. And although you do mention somewheres in your brief that they mismanaged the reservoir that was just in passing, it's a given, it's a premise that these were standard or at least accepted activities by the Corps which resulted in the failures of the system. Correct. There's no contention that the government conduct in operating and managing the Oahe Reservoir was not authorized. It was authorized and we believe that not conducted appropriately because what the theory of liability is, is that for a number of years, for the first 20 years of operation, there was a normal up and down of the raising and lowering of the levels of the reservoir. But what created the landslides in this case is that for a number of years beginning in the late 1980s, the Corps took the reservoir to levels it had never seen since it filled as far as being too low. And then because of that, the soil dried out and fissures were created. And then following that, the Corps raised the reservoir in the mid-90s up to levels it had never seen before, as high as it could go, which saturated the weakened soil that had been created by the cracks because the water was able to flow back into the cracks in places it had never been before. And that's what caused the landslide. Not the normal, typical operation that had been conducted the first 20 years. Thank you. Let's hear from the government, shall we? Thank you, Your Honors. And we'll see what questions remain. Thank you, Mr. Shattuck. Ms. Roundtree. Good morning, Your Honors. May it please the Court. I'd first like to just set straight for the Court that the question of the waiver of constitutional rights is an issue that wasn't presented to the lower court. It wasn't addressed by the city. It wasn't addressed by the city in its opening brief in this case. It was only raised by the amicus. And so it's not fairly or properly before this court. Also, I'd like to point out, as the city or as the defenders concedes this issue of waiver of constitutional rights as to civil cases, there's not a judicial consensus as to the proper standard that should be applied. Again, this is something that wasn't addressed by the lower court. The parties here haven't even addressed it. So the trying to couch – What are you trying to tell us? Don't listen to this argument or what? No, I'm saying that this case should not be couched as a question of waiver of constitutional rights. Let's get to the substance. Okay. As just briefly to discuss summary judgment, I'd just like to point out that the city is only entitled to justifiable or reasonable inferences. If there's evidence that supports the position of the court, then the court is entitled to that position. And simply mere allegations of what might be available, as Judge Bryson was suggesting, might be available if there are trial. Mere allegations alone cannot overcome summary judgment. I first feel compelled to address the city's threshold argument that it makes in both its reply and opening briefs. And that is that the versions of the easement sent by the court to the city in July 1973 and June 1977 were not mere proposals. According to the city, these were actually binding enforceable documents. I'd just like to point out to the court that the position the city has taken on appeal is actually exactly contrary to the position it took before the trier of fact. Now, I can point this out by pointing the court to pages 266 and 267 of the appendix. These are pages from the city's statement of uncontroverted facts. At page 266, paragraph 46, the city discusses the July 1973 version of the easement. And it doesn't state that it's binding or that it's enforceable. It states, actually, and I quote, the documents produced by the court demonstrate that on July 25th, 1973, the court forwarded to the city a proposed easement, granting the city a right of access across the court's land, unquote. We go down to paragraph 48. There, the city discusses both the 73. Now, when was that joint statement prepared before the trial court announced the theory of estoppel? I'm not quite certain, but actually, that's not relevant. You're not certain? The point I'm trying to make is that the city... Please answer the question. I don't know the exact date of the statement. It was indicated that the statement that you were reading from was apparently served on the 12th of December, 2002. And, Your Honor, this statement of facts... That was before the decision, is that right? Yes, it was, but the city didn't change its position at all below. It maintained the position and actually has made this argument to this court that the 73 and 77 easement versions are not proposals. The city is saying it can rely on the 73 and 77 positions for its takings claim. So, you're not defending the judgment of estoppel? I'm sorry?  The trial court properly found that the city should be estopped from arguing that it didn't consent to the March 1978 easement. But, actually, this court need not even reach the issue of estoppel because it can be established here that, number one, if the court will take the time after I sit down, apparently, and look at the pages I refer to and actually look at the city's other pleadings below, it has indicated that it's not the 73 or 77 easement that binds it. It's actually the only easement that the city refers to as not being a proposal because it states that all four of the versions of the easement that were submitted prior to March of 78, the city has admitted are proposals. So, we are to look solely at the March 1978 easement. According to the city, it didn't consent to that easement. Now, the court should be mindful of the fact that if the city is saying none of the four proposals bind the city or authorize its water supply system, and if the city is saying it didn't consent to the final easement that was final authorization by the court, the city is saying we didn't agree to that easement either, the court has to note that the city has no easement on which to base its takings claim. It can't base it on a proposed easement, and there are four of those, and it's saying as for the final one, we don't consent to that. So, by the city's own version of the facts of this case, there is no easement on which to base its takings claim. Now, with that- I'm not sure I understand your argument. If there's no easement, then there's no disclaimer, there's no waiver, there's no waiver of liability. If there's no easement, there is no authority for that water supply system to be on the Corps' land. If there's- I got the permit and the license. The permit is for particular structures on the Corps' land. Right. And the license was for use of a strip of land. So, as to, you're absolutely right, as to the city's property on the Corps' land, the permit would cover that. However, the easement extends beyond that. Well, but the easement, how can the easement extend to property that does not belong to the Corps? If the Court will look at the language of the easement, that's found at page 145. I understand how the waiver extends beyond the scope. I mean, the waiver can be as broad as the parties are willing to make it, but the easement itself, that is to say the permission to cross the land and put implements on the land, seems to me that's sort of by its nature confined to the property that is under the control of possession of the Corps. If the Court takes a close look at the language of the easement, it will notice that the clause is written in such a way that the legal scope of the clause, simply mirrors the physical scope of the structure that the city built. If the Court looks at the length of the first few sentences of the lease language, it speaks to two categories of property. One is property in general, and one is the property of the grantee. Now, the clause imposes no restrictions or no limitations as to where that property is located. It simply refers to property. Therefore, if the property of the city is located on the Corps' land, it's covered by the easement, and if the city's property is located off of the Corps' land, it's covered, because there are no- I don't understand. I'm really having a hard time understanding exactly what you're saying here. I could give, suppose I give an easement to the city of Washington, D.C., to come onto my property for purposes of putting a sewer through or something like that. I could write an easement that says, you have my permission to come onto my property, and for that matter, to come onto anywhere else in the city that you want and put in your sewer. But the only part that matters, the only part that has any legal effect, is the part in which I consent to have the city come onto my property. The rest of it is just legally, if I have no claim to any of the rest of that property, it has no effect. It's just empty verbiage, isn't it? Do you understand what I'm saying? Yes, but I don't understand- It sounds like what you're saying is, somehow this easement was important, setting aside the waiver now, I understand the waiver argument is separate, but somehow this easement conveyed rights outside of the scope of the Corps' property. I'm sorry, I might have misspoke. I'm speaking of the release clause. The release clause sets forth the circumstances under which a claim cannot be brought against the Corps. It's extraordinarily broad, which is one of the problems. As I said, it's only as broad as the structure that it's most concerned about. The structure was built on the Corps' land and extended off of this Corps' land for 13 miles. Naturally, the release clause covers the city's property on the Corps' land as well as off of the Corps' land. There's actually nothing unusual about it. As I said, the clause merely mirrors the structure that the city built. As I've pointed out, and I do ask the Court to take note of the fact that if this Court accepts the city's assertion that it didn't consent to the March 1978 easement, there is no easement on which this takings claim can be based, because the Corps cannot be made to pay for damages to a structure that is unauthorized or a structure that is illegally situated on the Corps' land. Let me just finish the one line, because I am concerned. You've gone back to the argument that I thought we had resolved that you weren't making, and now you're making it again, so let me make sure I understand what you're saying. What I'm hearing you say is that the property right, which is the basis on which the city is suing, is the easement, as one would sue, for example, for the taking of a contract or the taking of a piece of real property. I thought the city's position was that it has property off the area that's covered by the Corps' property, and that its property, which is off the Corps' property, was damaged, and that's the taking. Not that there was anything that was taken that depends on the existence of the easement as the underlying property interest. Well, the city is relying on the easement as its basis for the taking's claim. If the city were only concerned about its property off of the Corps' land and thought that was separate and apart from the easement, it wouldn't come to the Corps for this damage. Well, let me put it this way. Suppose what the Corps did was it decided to dig the reservoir deeper, and it took tons and tons of earth and threw it out onto the city's property and buried six acres of the city's property under 150,000 tons of dirt. The city could come up and say, you've taken this property because we can make no use of it. It's not on your land, Corps. You've appropriated it, in effect, by making it useless. That would be a taking theory that would depend in no way on the easement, correct? Yes. So isn't that what they're saying? You've done something by running the reservoir in the way you've done it that's damaged our property, which is off the area of Corps property. That's the argument they're making, but the release clause in the easement bars the claim. Now we're back to the release clause. I understand that argument. You kept saying that their claim depends on the easement. I think that what you, I think, would be saying is the limitation of their claim is established by the release clause in the easement, not that the claim somehow is predicated on the easement. Do you understand where I'm having a problem here? I believe so. Perhaps I've misstated simply because it's the easement in which the release clause is. That I understand. It was the other part I was having trouble with. I'm sorry for the interruption. But are the damages here, just to clarify what's at issue, isn't it within on the Corps' land as well as off, or is it just not exclusively damages accrued off of the Corps' land? The city is seeking damages for both, compensation for damages to both on and off. I'd just like to point out the five events that evidence that the city did consent to the March 1978 easement. The first is found in appendix page 138. It's a letter written in September 1978 from the city to the Corps. And it states in no uncertain terms that the city believed the easement process should end, and it in essence demands that the Corps send an easement to the city. And it doesn't ask for just any easement. It asks for a particular number, and the number is 45-2-78-6002. I'll refer to that as 6002. Now, within two weeks, the Corps sent easement 6002 to the city per its request, and the easement that it sent was the March 1978 easement. Now, when the Corps sent the city that easement, it didn't provide instructions that the city was to review this easement or to write a letter of approval. And the reason it didn't do that was because the easement that had been sent to the city at the city's request was a final easement. So there was no need for further review. There was no need for further approval. Now, when the city received the easement, again, per its request, it had in its possession the sole easement that had been executed by the Corps and indeed was the Corps' authorization of the easement. And it was the sole authority under which the city was able to operate its water supply system. Now, the last point is that once the city had received the easement that it asked for in September of 78, it kept it and it never indicated that it had any dispute with any term of that easement. And thereafter, it proceeded to operate and maintain its water supply system. Now, this sequence of events forms the unequivocal evidentiary basis for the conclusion that the city consented to the terms of the final easement that it received. And the last point I'd like to make is to point out to the Court that the evidence shows that when the city wished to express a concern, a question, or a criticism about any of the easement versions that went back and forth between the city and the Corps, what the city did was that it wrote to the Corps. And in no time— Let me interrupt you because we're running out of time, because you haven't dealt with the point that a constitutional right cannot be waived. Can you, in the remaining few seconds, restate your position? The release clause in the easement defines the claims that cannot be brought against the Corps. And the release clause actually provides a definition. But it doesn't say you can't bring a takings claim. It defines what can't be brought, and it says a claim can't be brought for damages to property. And then it has some additional language. In essence, the clause defines a takings claim. I'm not sure I understand. It doesn't say the word takings claim, and it doesn't have to. What does that have to do with the question concerning the constitutional right? Well, the constitutional right here is a takings claim. And I'm saying that the release clause defines a takings claim as one that cannot be brought against the city because it addresses— Defined sub silentio or necessarily or what? Necessarily by the definition. The definition that's in the release clause of the claims that cannot be brought necessarily defines a takings claim. Okay. Can I ask just one factual question to make sure I understand the state of the record on the easement? The first two easements apparently are lost, so we don't know exactly what their content was. Correct? The first four versions, which were proposals, are not in the record. That's correct. Oh, okay. I guess it's—all right. Starting in 73, is that when we started the process? Yes. There is some discussion back and forth, and I'm not sure I had exactly down what the state of the argument was with respect to what the later easement and any other evidence might indicate as to any changes—whatever changes, if any, were made in the basic document that started in 73. I didn't express that very clearly. What I'm asking for—what I'm trying to go with this question is what do we know, inferring backward from the 78 easement plus any evidence we have along the line about what the content of the easement may have been, how it changed, or how it stayed the same? Yes. I understand your question. Just to clarify, there were four proposals and then one final. Right. The final, and it's not disputed, has the release language in it. And in the easement, it specifically states that the release language, that particular paragraph, which is paragraph 7, had been altered. The court defined—the court explained that the release clause had been altered. So that's our starting point. In the 78—the March 78 easement, we have a release clause that had been altered. But not altered from the 73 version, but from the prior version. It simply says altered. And that's—you're absolutely right, Your Honor. We would assume that it has to be referring to—the alteration is based on the immediately preceding easement. That was the easement proposal that was issued in January of 1978. So we've gone one step back. We have the March 1978. That had an altered release clause. The January 1978 most likely had an unaltered release clause. So the question is, can we find anywhere in the record indicating that any of the prior proposals incorporated for the first time the release clause? If the court will note, every easement proposal that the court sent to the city was accompanied by a cover letter. And every cover letter notified the city of the changes that were made. So we would expect that if this release clause was incorporated for the first time in one of the proposals, as opposed to being in there from the very beginning, one of the court's cover letters would say, and city, one of the conditions that we have added is a release clause. We have nothing in the cover letters which define the changes had been made, indicate that a release clause had been introduced for the first time. So the only reasonable conclusion is that starting at the very beginning in 1973, the first proposal had the release clause. It stayed in there through each of the other, every proposal. And in March 1978, it was altered. And as the court had done all along, it brought that to the attention of the city and said, the clause that's been in there, parenthetically, that's been in there all along, we've altered it. And we want to bring it to your attention. Thank you, Ms. Roundtree. We're well over time. Mr. Shattuck? And would you add the time that we've run over, I think, to restore Mr. Shattuck's rebuttal? I want to make five basic points. First, the city does believe that the earlier easements that were issued by the government are relevant because the government has made this argument that if we didn't agree to the final easement, therefore we're trespassers, we didn't have authority to be on the property. We believe the earlier versions of the release are relevant because they show that we were authorized to be there. We were authorized, along with the permit and the license, to build our structure. And even if we didn't agree to the last easement issued by the government, those earlier easements show that we're not trespassers, that they knew we were there and they allowed us to be there. Second, I want to talk about the interpretation of the release in this case by the government is so broad that if an employee of the U.S. Army Corps of Engineers today took a pickup truck and ran into the City Hall building in the city of Gettysburg, the court could say, we're not liable because of the easement. The release says that you release all claims to city property. Let me make sure I understand exactly what the scope of your claim is. You are not, well maybe you are, tell me if I'm right, that you are claiming the damage to city property that is off the area that is owned by the Corps. We are claiming damage to both property that was on Corps property and off Corps property. So even property that's actually on Corps property, I mean city property that's actually on Corps property. Because not all of the property that was authorized by the permit, there's more on Corps property than just what was authorized by the Section 10 permit. There's a certain section of piping that would be separate. Anything authorized by the permit you would not be claiming? We are because we don't think there's a valid waiver of the permit. But even if we put that argument aside and say that we're not claiming any damages for stuff authorized by the Section 10 permit, we still have a claim for damage on Corps property because there would be a length of pipe on Corps property separate from what was authorized by the Section 10 permit. I think I best understood the scope of your claim. And our claim is independent. If the court rules that we were allowed to only pursue a claim for damage off of Corps property, we still have the same damages because whether or not you look at that, the breaks that occurred on Corps property, it doesn't matter because damage caused off by Corps property rendered the system unusable and destroyed independent of damage on Corps property. So it really doesn't matter. The damages are the whole system. And the damage to the whole system was caused by, if you want to look at it, you could just say damage off Corps property. Well, so to be sure I understand that the court put them all together, actually, in terms of a final disposition, that there was no entitlement. Isn't that right, based on estoppel? Right. The court found that we were stopped from arguing that we did not agree to the release in the 1970s and 1980s and that that release warranted all claims. A total release. And that was her finding on the 1978 easement. I'm sorry. I hate to beat a dead horse, but just to clarify for myself as well, is there – so are you suggesting there's an on – part of the system is on the Corps land, part of it is off the Corps land. But I thought your final comment suggested that with respect to damages or Mount Dew, it's not severable, that even if we were hypothetically to find there was some liability of the government for the off-site, off-Corps land, structural damage, yada, yada, then that would be the whole amount of money because you can't sever it? That's a question that I've thought about, and it's probably beyond this appeal, because if we had a claim for just damages that occurred off Corps property, then it would be a question of what's the proper measure of damages if the damage to the property rendered the whole system unusable. Does that entitle us to a damage remedy of the whole system or just what 95 percent, which was located off Corps property? That's probably a question of damages that we would have to find out. But isn't that problematic for you if you look at it the other way, which is that if that's the case, then if we just look discreetly at the damage that occurred on Corps property and we were to find that there's no liability with respect to that, we ought to end the case and not necessarily reach the off property? No, because I thought about that. We could have repaired that. There was no—what was on Corps property was the intake structure in the water leading to the pump house. No damage to that part of the system occurred. The only damage that occurred on the—the primary damage that occurred on Corps property was damage to the pump house. We could have fixed that. If the only damage would have been the damage on the Corps property itself, we could have fixed that and saved the system. We could have fixed the pump house. But it was the accumulation of the damage off of the property, the final break that occurred where we had to splice the line above the land that occurred off the Corps property. You haven't asked for severability. Did you argue that this additional relief might be available? I don't recall such a request for relief with respect to city property only. I don't follow the question. I'm sorry, Your Honor. The trial court put everything together and said this waiver, this estoppel, or whatever there is, and you agreed that there's no liability, and that ends it. And that ended it. And that's the case. Can we go back for a further trial or a determination of quantum as to some damage and not others? Well, the issue of causation and damage was not before the court. The only issue the trial court addressed was whether we were stopped from arguing that the release did not var—that we were stopped from arguing that we were not bound by the release in the easement and that the release itself barred all claims. We never got to that stage of it. That was not an issue in the trial court. And it's our position that the court misapplied the release and the easement because it doesn't reference takings claims, doesn't include takings claims, and the parties never waived the right, and the city never waived the right to pursue the takings claims for the release. Okay. If I could ask one more question. Let me make sure I understand this because this is, I think, a pretty broad argument that you're making on this, the necessary ingredients of the release. To go back to my example of the city wanting to come onto my property to put in, let's say, water service. You need a release. They say, we expect you to give us an easement to come across your property, and you will waive any damage that may incidentally occur when you put in the trench to put in your water service to your lawn or otherwise your bushes and trees and so forth. And I sign that. I waive all that. But the waiver doesn't contain any reference to a takings. I can sue the city for destruction to my lawn that occurs incident to the putting in of the water service, notwithstanding that waiver clause, right? In that case, you were aware of the clause and you signed it. Yeah, but it didn't have anything about takings in it. I would say that under the law, you have not waived your takings claims that may subsequently occur 20 years later. Well, and your hypothetical is different. You're talking about if they came in and they trashed your property, but that could be analogous to this case. We have to assume 20 years later the pipe broke, destroyed your house as a result of it. And then you could say, yes, I never waived that claim because that's completely independent and different in the constitutional right to begin with. Thank you. Okay. Thank you, Mr. Shatter and Ms. Roundtree. The case is taken under submission.